## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| **WAYNE WM. PETERSON,** | § § | Case No.: 12-cv-00381 |
| **Plaintiff,** | § § | |
| **v.** | § § | **COMPLAINT FOR COPYRIGHT** |
| **HARLEY-DAVIDSON, INC. and HARLEY-DAVIDSON MOTOR COMPANY, INC.,** | § § § § | **INFRINGMENT** |
| **Defendants.** | § § § | |

Plaintiff Wayne Wm. Peterson ("Peterson"), by his attorneys, for his Complaint for Copyright Infringement against Defendants Harley-Davidson, Inc. and Harley-Davidson Motor Company, Inc. (collectively, "Harley-Davidson"), allege as follows (on knowledge as to Plaintiff; otherwise on information and belief):

### JURISDICTION AND VENUE

1.     This is a suit for copyright infringement under the United States Copyright Act of 1976, as amended, 17 U.S.C. Sections 101 et seq. (the "Copyright Act"). This Court has jurisdiction pursuant to 28 U.S.C. Section 1338(a).

- 1 -

2.     Venue is proper in this judicial district pursuant to 28 U.S.C. Section 1400(a).

## PARTIES

3.     Plaintiff Wayne Wm. Peterson ("Peterson") is an individual residing in Muskego, Wisconsin.

4.     Defendants Harley-Davidson, Inc. and Harley-Davidson Motor Company, Inc. (collectively, "Harley-Davidson") are Wisconsin corporations with their principal places of business at 3700 W. Juneau Ave., Milwaukee, Wisconsin 53208.

## FACTUAL BACKGROUND

5.     Peterson, who formerly did business as Peterson Studios Ltd., is a freelance commercial artist. From the mid 1970s to the mid 2000s, Harley-Davidson commissioned Peterson, as an independent contractor, to produce more than 600 pictorial, graphic, sculptural, and other works. Peterson's work includes many of Harley-Davidson's most widely recognized branding and marketing images.

6.     In 1985, Harley-Davidson commissioned Peterson to create a work, limited to placement on one run of timing and carburetor covers, that would become iconic for the company, the "Live to Ride" logo. Peterson fulfilled that commission,

- 2 -

hand-drawing and hand-lettering a completely new artwork, as seen in Figure 1. A copy of the artwork submitted to Harley-Davidson is attached hereto as Exhibit A, and it will be referred to as the "Live to Ride Logo."



Figure 1. Live to Ride Logo

- 3 -

7.    In 1991, Harley-Davidson commissioned Peterson to create a logo for a run of folder covers at its Harley-Davidson University, a "school" where it trains dealers and technicians. Peterson fulfilled that commission, again hand-drawing and hand-lettering a completely new artwork centered around the Harley-Davidson logo, as seen in Fig. 2.   A copy of the artwork submitted to Harley-Davidson is attached hereto as Exhibit B, and it will be referred to as the "Harley-Davidson University Logo," and collectively with the Live to Ride Logo, the "Peterson Created Logos."



- 4 -

Figure 2. Harley-Davidson University Logo

8.      The Live to Ride Logo is registered with the United States Copyright Office. Peterson is the exclusive owner of U.S. Copyright with Registration Number VA 1-747-899 for the Live to Ride Logo, titled LIVE TO RIDE RIDE TO LIVE. A copy of that Certificate of Registration is attached hereto as Exhibit C.

9.      Peterson's LIVE TO RIDE RIDE TO LIVE copyright is valid and subsisting.

10.     The Harley-Davidson University Logo is registered with the United States Copyright Office.   Peterson is the exclusive owner of U.S. Copyright with Registration Number VA 1-738-580 for the Harley-Davidson University Logo, titled HARLEY-DAVIDSON UNIVERSITY.   A copy of that Certificate of Registration is attached hereto as Exhibit D.

11.     Peterson's HARLEY-DAVIDSON UNIVERSITY copyright is valid and subsisting.

12.     When Peterson submitted the Peterson Created Logos, he also submitted his invoices for the work, copies of which are attached hereto as Exhibits E and F, respectively.   On those invoices, and on every invoice Peterson submitted to Harley-Davidson for his work with them over for 25 years, Peterson clearly

- 5 -

licensed Harley-Davidson to use his works subject to the express limitation that plainly appears on the bottom:

> All illustrations are sold on a ***one time one run basis***, and ***remain the property of Peterson Studios Ltd.*** to which they are to be returned.

*See* Exhibits E and F (emphasis added). *See also,* Figure 1 above and Exhibit A.

13.    Harley-Davidson agreed to the terms of the invoices, paid the amount due in full, and used Peterson Created Logos.

14.    Peterson never transferred ownership of the copyrights in his works to Harley-Davidson.  As reflected in the express limitations of the invoices attached hereto as Exhibits E and F, Peterson never licensed Harley-Davidson to use the Peterson Created Logos in any manner beyond a limited "one time one run" authorization, one run for the timing and carburetor covers for the Live to Ride Logo and one run for the folder covers for the Harley-Davidson University Logos.

15.    Peterson was never an employee of Harley-Davidson.

16.    Harley-Davidson did not have a work for hire agreement with Peterson for the Peterson Created Logos or any other work Peterson did for Harley-Davidson.

17.     In fact, the only written agreement Harley-Davidson ever offered Peterson was in 1993 when Harley-Davidson sent Peterson a standard boiler plate vendor Non-Disclosure Agreement, which Peterson did not sign.

### DEFENDANTS' ACTIONS

18.     Despite the clear language of the invoices and Defendants' knowledge that the Peterson Created Logos were limited to a "one time one run" authorization, Defendants have, without any authorization permitting them to do so, continually displayed, reproduced, and distributed Peterson's Peterson Created Logos on hundreds, if not thousands, of runs of products, packaging material, and marketing material, including, but not limited to, clothing (such as boxers, jackets, vests, shirts and hats), motorcycle accessories (such as derby covers, gas cap medallions, universal medallions, tear drop air cleaners, console door covers, brake caliper trim disks, handlebar clamp covers, air cleaner trim plates, chain inspection covers, and handlebar grips), and other articles (such as pins, watches and buckles).

19.     As an example, copies of some catalogs and websites offering the infringing merchandise, accessories, and other articles for sale, and their correlating packaging and marketing material, are attached hereto as Exhibit G.

- 7 -

20.     One example of the thousands of unauthorized uses is seen in Figure 3, their "Live to Ride" Collection Universal Medallion offered for sale on Harley-Davidson's website as of March 8, 2012.



Figure 3. "Live To Ride" Collection Universal Medallion

21.     As can be seen in the side by side comparison in Figure 4, Harley-Davidson's "Live to Ride" Collection Universal Medallion uses an exact copy of Peterson's Live to Ride Logo, except that Harley-Davidson places a ® next to the text "Harley-Davidson," its own name, ironically in an attempt to protect their

- 8 -

perceived intellectual property from counterfeiters. Tellingly, Harley-Davidson never even applied for a copyright for Live to Ride Logo - due to Peterson being the author.



Figure 4. Side by Side Comparison of the Live to Ride Logo and Harley-Davidson's "Live to Ride" Collection Universal Medallion

22.     Defendants' use of the Peterson Created Logos in the manner complained of herein constitutes infringement of Peterson's valid copyrights in and to the Peterson Created Logos.

23.     The natural, probable, and foreseeable result of Defendants' wrongful conduct has and continues to be to deprive Peterson of the benefits and revenues

- 9 -

from the sale of an appropriate license to use the Peterson Created Logos as Defendants have.

24.    Peterson will continue to lose substantial revenue from Defendants unauthorized, infringing and wrongful uses, copying, creation of derivative works, and distribution of Peterson's copyrighted Peterson Created Logos.

## PETERSON'S EFFORTS TO ENFORCE HIS RIGHTS

25.    Defendants have refused to either cease and desist from infringing upon Peterson's valuable copyrights or negotiate a license beyond the limited "one time one run" authorization for the use of Peterson's Peterson Created Logos despite several demands for such action.

26.    Harley-Davidson was clearly put on notice and aware that Peterson was declaring he held these copyrights and that Harley-Davidson was and continues to use his works without authorization.

27.    As early as the year he submitted the Live to Ride Logo in 1986, Peterson discussed with Harley-Davidson personnel about how some designers received "points" or royalties on designs, and that he should receive the same.

28.    Peterson continued these discussions with Harley-Davidson personnel throughout the years in an attempt to negotiate a proper license for his works, all

- 10 -

the while Harley-Davidson reaped substantial profits from its "Live to Ride Collection" which uses Peterson's Live to Ride Logo, as shown by example in Exhibit G.

29.     In 1995, feeling that Harley-Davidson personnel did not appreciate his requests for license negotiations, Peterson sent a letter expressing his frustration that Harley-Davidson continues to use his designs "without my knowledge, permission or recompense."  Harley-Davidson never responded to this letter and continued to use Peterson's works without authorization.  The October 24, 1995 letter is attached hereto as Exhibit H.

30.     On or around June of 1996, Peterson had a lunch meeting with a Harley-Davidson executive and again expressed his concerns with Harley-Davidson's unauthorized use of his copyrighted works.  In response, he was told a story of Harley-Davidson asking an Italian shoe company to submit a design for a driving shoe. Peterson was then told that the price of their design was too high, so Harley-Davidson took the design and had it reproduced elsewhere. He was then told that when the Italian company threatened to sue, "we just gave him a couple of bucks to go away."

- 11 -

31.    In 1998, Peterson even attempted to retain legal counsel to pursue his claims of unauthorized use and infringement. With work still coming from Harley-Davidson, however, Peterson continued in his attempts to discuss his concerns with Harley-Davidson, but delayed legal action believing Harley-Davidson would ultimately do what was right and honor his "one time one run" agreement and copyrights.

32.    Harley-Davidson ignored his concerns of its wrongful use of his copyrights and made it clear that he should not push too hard.  He was even told by a Harley-Davidson manager "I have a million dollars to spend on trademark cases, and I will spend it."

33.    In 2007, Peterson learned that a new President of Harley-Davidson was appointed.  Hoping the new President would be more reasonable than prior Harley-Davidson executives, Peterson sent a letter again expressing his concerns of Harley-Davidson's unauthorized use of his works.  The August 6, 2007 letter is attached hereto as Exhibit I.

34.    In response to this letter, Harley-Davidson's legal department contacted Peterson.  Peterson and the legal department corresponded numerous times until on or around June 2008, when negotiations came to an impasse.  All the while,

- 12 -

Harley-Davidson continued, and continues to this day, to use his Peterson Created Logos without authorization.

35.    After numerous and frustrating attempts to retain counsel from that point, Harley-Davidson can no longer wrongfully profit from the unauthorized use of the copyrighted Peterson Created Logos.

**FIRST CAUSE OF ACTION**
**COPYRIGHT INFRINGEMENT**
**17 U.S.C. § 501**
**(Live to Ride Logo)**

36.    Plaintiff repeats and re-alleges each and every allegation of the Complaint as set forth in Paragraphs 1 through 32 inclusive, and incorporates them herein by this reference.

37.    Defendants have improperly copied, created derivative works based thereon, and have further used and distributed Plaintiff's Peterson Created Logos as its own logos in connection with Defendants' products, packaging material, and marketing material, including, but not limited to, clothing (such as boxers, jackets, vests, shirts and hats), motorcycle accessories (such as derby covers, gas cap medallions, universal medallions, tear drop air cleaners, console door covers, brake caliper trim disks, handlebar clamp covers, air cleaner trim plates, chain inspection covers, and handlebar grips), and other articles (such as pins, watches and buckles). As an

- 13 -

example, copies of some catalogs and websites offering the infringing merchandise, accessories, and other articles for sale, and their correlating packaging and marketing material, are attached hereto as Exhibit G.

38.    Defendants' infringement was willful because, as prominent and sophisticated companies who through their executives openly boasted of taking advantage of and infringing others art and have been named in other infringement lawsuits for doing so, they knew or should have known that their conduct constituted copyright infringement or, at least, recklessly disregarded the possibility.    Indeed, Defendants are no stranger to being accused of infringing others intellectual property, including the following lawsuits: *Brando Enterprises LP v. Harley-Davidson Motor Company, Inc. et al*, Central District of California, Case No. 2:11-cv-05473 (filed June 30, 2011) (involving allegations that Harley-Davidson infringed the Marlon Brando estate's publicity rights for its commercial endeavor by using actor's name and implying a connection to an old Brando film where he wore similar looking boots); *Tidwell v. Harley-Davidson, Inc. et al*, Western District of Kentucky, Case No. 3:11-cv-00318 (filed May 25, 2011) (involving allegations Harley-Davidson infringed plaintiff's copyrighted art by using it without authorization on merchandise); and *Mag Instrument, Inc. v.*

- 14 -

*Harley-Davidson, Inc. et al*, Central District of California, Case No. 2:08-cv-03552 (filed May 30, 2008) (involving Harley-Davidson infringing Mag Instrument's patents and trademarks on its design for flashlights). Defendants' willful infringement is also manifested by disregarding Plaintiff's continual communications, through letters, e-mails, and meetings that maintained his copyrights and put Defendants on notice of the copyright infringements.

39.    Defendants' acts have damaged and are continuing to damage Plaintiff in an amount and to an extent as yet unknown.

40.    Plaintiff has no adequate remedy at law.

**SECOND CAUSE OF ACTION**
**CONTRIBUTORY COPYRIGHT INFRINGEMENT**
**17 U.S.C. § 101**
**(Live to Ride Logo)**

41.    Plaintiff repeats and re-alleges each and every allegation of the Complaint as set forth in Paragraphs 1 through 37 inclusive, and incorporates them herein by this reference.

42.    By reason of the acts complained of herein, Defendants have engaged and will continue to knowingly engage in activities that systematically induce and materially cause others to contribute to the past and ongoing infringement of Plaintiff's copyrights in the Peterson Created Logos.

- 15 -

43. Defendants' actions complained of herein constitute contributory infringement of Plaintiff's valid copyrights.

44. Defendants have derived substantial financial benefit from the infringement of Plaintiff's copyrighted Peterson Created Logos.

45. Plaintiff is entitled to recover damages he has sustained and will continue to sustain, together with any gains, profits, and advantages obtained by Defendants as a result of the acts of infringement alleged herein.

46. At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by Plaintiff.

47. Plaintiff has no adequate remedy at law.

### THIRD CAUSE OF ACTION
### COPYRIGHT INFRINGEMENT
### 17 U.S.C. § 501
### (Harley-Davidson University Logo)

48. Plaintiff repeats and re-alleges each and every allegation of the Complaint as set forth in Paragraphs 1 through 44 inclusive, and incorporates them herein by this reference.

49. Defendants have improperly copied, created derivative works based thereon, and have further used and distributed Plaintiff's Peterson Created Logos as its own logos in connection with Defendants' products, packaging material, and marketing

- 16 -

material, including, but not limited to, clothing (such as boxers, jackets, vests, shirts and hats), motorcycle accessories (such as derby covers, gas cap medallions, universal medallions, tear drop air cleaners, console door covers, brake caliper trim disks, handlebar clamp covers, air cleaner trim plates, chain inspection covers, and handlebar grips), and other articles (such as pins, watches and buckles). As an example, copies of some catalogs and websites offering the infringing merchandise, accessories, and other articles for sale, and their correlating packaging and marketing material, are attached hereto as Exhibit G.

50.    Defendants' infringement was willful because, as prominent and sophisticated companies who through their executives openly boasted of taking advantage of and infringing others art and have been named in other infringement lawsuits for doing so, they knew or should have known that their conduct constituted copyright infringement or, at least, recklessly disregarded the possibility.   Indeed, Defendants are no stranger to being accused of infringing others intellectual property, including the following lawsuits: *Brando Enterprises LP v. Harley-Davidson Motor Company, Inc. et al*, Central District of California, Case No. 2:11-cv-05473 (filed June 30, 2011) (involving allegations that it infringed the Marlon Brando estate's publicity rights for its commercial endeavor

- 17 -

by using actor's name and implying a connection to an old Brando film where he wore similar looking boots); *Tidwell v. Harley-Davidson, Inc. et al*, Western District of Kentucky, Case No. 3:11-cv-00318 (filed May 25, 2011) (involving allegations it infringed plaintiff's copyrighted art by using it without authorization on merchandise); and *Mag Instrument, Inc. v. Harley-Davidson, Inc. et al*, Central District of California, Case No. 2:08-cv-03552 (filed May 30, 2008) (involving Harley-Davidson infringing Mag Instrument's patents and trademarks on its design for flashlights). Defendants' willful infringement is also manifested by disregarding Plaintiff's continual communications, through letters, e-mails, and meetings that maintained his copyrights and put Defendants on notice of the copyright infringements.

51. Defendants' acts have damaged and are continuing to damage Plaintiff in an amount and to an extent as yet unknown.

52. Plaintiff has no adequate remedy at law.

- 18 -

## FOURTH CAUSE OF ACTION
## CONTRIBUTORY COPYRIGHT INFRINGEMENT
## 17 U.S.C. § 101
## (Harley-Davidson University Logo)

53.     Plaintiff repeats and re-alleges each and every allegation of the Complaint as set forth in Paragraphs 1 through 49 inclusive, and incorporates them herein by this reference.

54.     By reason of the acts complained of herein, Defendants have engaged and will continue to knowingly engage in activities that systematically induce and materially cause others to contribute to the past and ongoing infringement of Plaintiff's copyrights in the Peterson Created Logos.

55.     Defendants' actions complained of herein constitute contributory infringement of Plaintiff's valid copyrights.

56.     Defendants have derived substantial financial benefit from the infringement of Plaintiff's copyrighted Peterson Created Logos.

57.     Plaintiff is entitled to recover damages he has sustained and will continue to sustain, together with any gains, profits, and advantages obtained by Defendants as a result of the acts of infringement alleged herein.

58.     At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by Plaintiff.

- 19 -

Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff Wayne Wm. Peterson requests judgment in his favor and against Defendants as follows:

      A.     That, pursuant to 17 U.S.C. § 502, Defendants, their directors, officers, agents, servants, employees, successors, assigns, and all those in active concert or participation with them, be enjoined and restrained permanently from infringing the copyrights in the Peterson Created Logos, or any other of Plaintiff's works, in any manner, and from reproducing, adapting, displaying, publishing, advertising, promoting, selling, offering for sale, marketing, distributing or otherwise disposing of the Peterson Created Logos or any copies of the Peterson Created Logos, or any other of Plaintiff's works, and from participating or assisting in or authorizing such conduct in any way.

      B.     That Defendants be required to pay Plaintiff such damages as Plaintiff has sustained in consequence of Defendants' infringements of the copyrights in the Peterson Created Logos and to account for and pay Plaintiff all of the Defendants' profits attributable to such infringements or, alternatively, as Plaintiff may elect, the Plaintiff be awarded such statutory damages as the Court may find just because of Defendants' willful acts of infringement.

- 20 -

C.     That Defendants be required to deliver up on oath for impounding, destruction, or other disposition, as Plaintiff determines, all infringing copies of the Peterson Created Logos in their possession, custody, or control and all transparencies, plates, masters, tapes, discs, and other articles for making such infringing copies.

D.     That Defendants be required to notify in writing any current or future owners of any infringing articles of whom they are or become aware that the articles infringe the copyrights in the Peterson Created Logos, that the articles were not lawfully made under the Copyright Act, and that the articles cannot lawfully be displayed under 17 U.S.C. § 109(c).

E.     That Defendants pay to Plaintiff the full costs of this action, including reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

F.     That Plaintiff has such other relief as is just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

- 21 -

Dated: April 25, 2012                    Respectfully submitted,

                                         /s/ Christopher A. Honea
                                         Randall T. Garteiser
                                           randall.garteiser@sftrialattorneys.com
                                         Christopher A. Honea
                                           chris.honea@sftrialattorneys.com
                                         GARTEISER HONEA, PC
                                         44 North San Pedro Road
                                         San Rafael, California 94903
                                         [Tel.] (415)785-3762
                                         [Fax] (415)785-3805


                                         **ATTORNEYS FOR WAYNE WM. PETERSON**