# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**WAYNE WM. PETERSON,**
        Plaintiff,

    v.                                  Case No. 12-CV-00381

**HARLEY-DAVIDSON, INC. and
HARLEY-DAVIDSON MOTOR
COMPANY, INC.,**
        Defendants.

## DECISION AND ORDER

Wayne Wm. Peterson, a freelance commercial artist, produced works for Harley-Davidson, Inc., and Harley-Davidson Motor Company, Inc., (collectively, "Harley") between the mid 1970s and the mid 2000s. Two of the works that Peterson produced for Harley are the subject of this litigation. The first is the "Live to Ride" logo, created in 1985:



The second is the "Harley-Davidson University" logo, created in 1991:



Peterson alleges that he owns the copyrights for these works, that the license he granted Harley was limited to "one time one run," and that Harley has, without authorization, continued to use these works on hundreds, if not thousands, of runs of products, packaging material and marketing material since they were created.

Harley has brought a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). Harley's principal ground for dismissal is that the lawsuit is barred by the doctrine of laches. In the alternative, Harley argues that all claims based on alleged acts of infringement that occurred before April 25, 2009, are barred by the three-year statute of limitations under the Copyright Act of 1976, 17 U.S.C. § 507(b).

Both laches and the statute of limitations are affirmative defenses, see Fed. R. Civ. P. 8(c)(1), and the general rule is that as long as the complaint states a claim (as it does here), it may not be dismissed on the basis of an affirmative defense, since the Federal Rules do not require a plaintiff to anticipate and plead around potential affirmative

defenses.  See, e.g., Xechem, Inc. v. Bristol-Meyers Squibb Co., 372 F.3d 899, 901 (7th Cir. 2004).  However, if the plaintiff pleads himself out of court—that is, admits all the ingredients of an impenetrable defense—then a complaint that otherwise states a claim can be dismissed under Rule 12(b)(6).  Id.

In the present case, Peterson has not pleaded all the ingredients of laches.  "For laches to apply in a particular case, the party asserting the defense must demonstrate: (1) an unreasonable lack of diligence by the party against whom the defense is asserted and (2) prejudice arising therefrom."  Hot Wax, Inc. v. Turtle Wax, Inc., 191 F.3d 813, 820 (7th Cir. 1999).  Peterson has not pleaded facts conclusively establishing either of these elements.  First, he has not pleaded facts that conclusively establish an unreasonable lack of diligence.  Although the facts alleged indicate that Peterson waited a long time to file this suit, that does not mean that his delay was unreasonable as a matter of law.  What is reasonable depends on the totality of the circumstances, and since Peterson had no duty to anticipate a laches defense and plead facts showing that his delay was reasonable, I do not know what the totality of the circumstances will show.  Thus, based on the complaint alone, I cannot determine whether Peterson's delay was unreasonable.  Likewise, Peterson has not pleaded facts that conclusively establish that Harley was prejudiced by any unreasonable delay.  Although it may be reasonable to infer that Peterson's delay caused Harley prejudice, the allegations of the complaint do not establish that that is the only reasonable inference.  And because on a motion to dismiss for failure to state a claim all inferences must be drawn in favor of the non-movant, see, e.g., Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008), I must resolve this issue in Peterson's favor.  Accordingly, I will not dismiss the complaint on the basis of laches.

With respect to the statute of limitations, Harley argues that it bars any claims based on acts that occurred more than three years before Peterson filed this suit—that is, before April 2009. According to Peterson, however, Harley has been engaged in continuous acts of copyright infringement involving the two works since they were created in 1985 and 1991. He contends that under the "continuing wrong" or "continuing violation" doctrine, he is entitled to recover damages for the entire course of conduct and is not limited to damages for acts that occurred within the last three years.

According to Seventh Circuit cases decided in the 1990s and 2000s, the continuing-violation doctrine applies when a plaintiff's cause of action does not accrue until a series of wrongful acts blossoms into an injury on which suit can be brought. See Limestone Dev. Corp. v. Vill. of Lemont, Ill., 520 F.3d 797, 801 (7th Cir. 2008); Heard v. Sheahan, 253 F.3d 316, 319–20 (7th Cir. 2001). The typical example is workplace sexual harassment. See Limestone Dec. Corp., 520 F.3d at 801; Dasgupta v. Univ. of Wis. Bd. of Regents, 121 F.3d 1138, 1139 (7th Cir. 1997); Galloway v. Gen. Motors Serv. Parts Operations, 78 F.3d 1164, 1166–67 (7th Cir. 1996). As the court explained in Limestone Development Corp.:

> The first instance of a coworker's offensive words or actions may be too trivial to count as actionable harassment, but if they continue they may eventually reach that level and then the entire series is actionable. If each harassing act had to be considered in isolation, there would be no claim even when by virtue of the cumulative effect of the acts it was plain that the plaintiff had suffered actionable harassment.

520 F.3d at 801 (citation omitted). In other words, until a series of offensive acts accumulates into an actionable case of harassment, the plaintiff has no claim. But once the claim accrues, the continuing-violation doctrine allows the plaintiff to seek damages for

the entire series of harassing behavior, even if some of the earlier acts in the series occurred outside the limitations period.

The continuing-violation doctrine, as described in the Seventh Circuit's more recent cases, does not seem to apply in this case. Peterson's claim accrued as soon as he learned, or should as a reasonable person have learned, that Harley had violated his copyrights. See Gaiman v. McFarlane, 360 F.3d 644, 653 (7th Cir. 2004). Peterson did not need to wait to sue until a series of wrongful acts blossomed into a legally cognizable injury; he could have sued as soon as he discovered that Harley was making unauthorized copies of his works and sought damages for past violations and an injunction prohibiting future violations. However, in Taylor v. Meirick, 712 F.2d 1112 (7th Cir. 1983), the Seventh Circuit applied the continuing-violation doctrine in a way that favors Peterson. In that case, the court stated that the statute of limitations does not begin to run on a copyright claim involving a continuing series of copyright infringements until the entire series is over and done with. Id. at 1118–19. The infringement in Taylor involved a defendant who copied the plaintiff's maps, sold them, and either continued to sell them or connived at his dealers' continuing to sell them up until the time that the plaintiff filed suit. Id. at 1119. The court found that the defendant's course of conduct constituted a continuing wrong, and that therefore the plaintiff was entitled to base his suit on the entire series, even though the initial copying and the earliest sales occurred more than three years before the plaintiff filed suit. Id. Thus, if Taylor's description of the continuing-violation doctrine remains accurate, Peterson would be able to take advantage of it here, since according to the complaint Harley has been continually violating Peterson's copyrights since the mid 1980s.

5

Taylor's application of the continuing-violation doctrine seems to be in tension with the Seventh Circuit's more recent cases involving the doctrine, such as the sexual-harassment cases discussed above. Unlike a plaintiff in a typical sexual-harassment case, the plaintiff in Taylor had a cause of action that he could have asserted as soon as the initial infringing act occurred; he did not need to wait to file suit until the defendant brought his infringing behavior to an end. Thus, it seems that under the Seventh Circuit's more recent cases, the plaintiff in Taylor would not have been able to invoke the continuing-violation doctrine. The Seventh Circuit's decision in CSC Holdings, Inc. v. Redisi, 309 F.3d 988 (7th Cir. 2002), underscores this point. In that case, a cable-television service provider brought suit against a manufacturer of decoders that could be used to steal cable-television programming. The manufacturer sold more than 2,700 decoders over a continuous, seven-year span, and the provider filed suit against the manufacturer under the Cable Communications Policy Act of 1984, which made the sale of such devices unlawful. However, the statute of limitations for claims under the Act was two years, and so the manufacturer argued that any sales made during the first five years were not actionable. The provider attempted to invoke the continuing-violation doctrine, arguing that the sales made over the course of seven years amounted to a single, continuing violation. The Seventh Circuit rejected this argument, reasoning that each sale was a "separate and discrete statutory violation" and that "[t]he mere fact that the [manufacturer] made a regular habit of violating the statute is not enough to convert multiple individual violations into one long continuing wrong." Id. at 992. The copyright-infringement claims in Taylor do not appear to have been meaningfully different than the claims at issue in CSC Holdings. In Taylor, each infringing act was a separate and distinct violation of the Copyright Act, just

6

like each sale of an unlawful decoder was a separate and distinct violation of the Cable Communications Policy Act of 1984. It is thus hard to reconcile Taylor with the more recent cases.

Harley attempts to distinguish Taylor by pointing out that in that case the defendant made calculated efforts to conceal his infringement. But the application of the continuing-violation doctrine in Taylor did not turn on the defendant's acts of concealment. The acts of concealment were relevant only to the court's alternative holding, which was that the plaintiff could sue for violations that occurred more than three years prior to filing suit because, under the "fraudulent concealment" rule, the statute of limitations was tolled during the time that the defendant was actively trying to conceal his infringement. 712 F.2d at 1119. Thus, pointing to the defendant's attempt to conceal his infringement does not resolve the tension between Taylor and the court's more recent cases.

Because Taylor has not been overruled, I am bound by it even if the Seventh Circuit might be inclined to modify or overrule it in light of its more recent pronouncements on the continuing-violation doctrine. See Taco Bell Corp. v. Cont'l Cas. Co., 388 F.3d 1069, 1077 (7th Cir. 2004); Donohoe v. Consol. Operating & Prod. Corp., 30 F.3d 907, 910 (7th Cir. 1994). And based on the allegations in the complaint, it appears that Taylor controls the outcome in this case: the complaint alleges that (or at least does not exclude the possibility that) Harley was engaged in a single course of infringement that began in the mid 1980s and continues to this day. Thus, as in Taylor, Peterson should in this case be able to seek damages for the entire course of infringement. Of course, after Harley has had a chance to develop the factual record, it may turn out that Taylor is either inapplicable or

7

distinguishable and that Peterson cannot invoke the continuing-violation doctrine. But as things stand, Peterson has not pleaded all the elements of an impenetrable statute-of-limitations defense, and so Harley's motion to dismiss the claims that accrued before April 2009 will be denied.

Accordingly, **IT IS ORDERED** that Harley's motion to dismiss the complaint is **DENIED**.

**IT IS FURTHER ORDERED** that Peterson's motion to file a surreply brief is **GRANTED.**

Dated at Milwaukee, Wisconsin, this 31st day of July 2012.

<u>s/ Lynn Adelman</u>
LYNN ADELMAN
District Judge